# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re BMI OLDCO INC., *et al.*,** | **§** | **Civil Action No. 4:25-cv-2193** |
| | **§** | |
| **Debtors.** | **§** | **Bankruptcy Case No. 23-90794 (MI)** |
| | **§** | |
| | **§** | |
| | **§** | |

**AMERICAN INTERNATIONAL INDUSTRIES' MOTION TO FIX VENUE FOR CLAIMS RELATED TO BMI'S BANKRUPTCY UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b) AND BRIEF IN SUPPORT THEREOF**

Party-in-Interest and Intervenor, American International Industries ("A-I-I"), submits this brief in support of its motion for an order, under 28 U.S.C. §§ 157(b)(5) and 1334(b), fixing venue in this Court for the eight personal injury and wrongful death claims identified on Exhibit 1 (collectively, the "Talc Claims"). The Talc Claims, which are currently pending against A-I-I in various state courts, allege that consumer use of talc mined and manufactured by the Debtor, Barretts Minerals, Inc. ("BMI"),[1] and incorporated into A-I-I's Clubman Talcum Powder product, caused the plaintiffs to develop asbestos-related mesothelioma. Each plaintiff has filed a Proof of Claim in the underlying bankruptcy proceeding. So has A-I-I.

[1] The debtors in this case (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) ("BMI") (8715) and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

Given the unity of identity of between A-I-I and BMI, the uniformity of the source of the personal injury or wrongful death, and the beneficial effects of consolidation on the pending state court cases and the Estate, the Talc Claims against A-I-I should be transferred to this Court and stayed pending this Court's determination of whether BMI talc "contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases."

Dated: September 2, 2026

Respectfully submitted,

*_/s/ Robert E. Thackston_*
Robert E. Thackston
Texas Bar No. 00785487
S.D. Tex. ID No. 17568
robert.thackston@nelsonmullins.com
Emily K. Nguyen
Texas Bar No. 24143732
S.D. Tex. ID No. 3896600
emily.nguyen@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
3333 Lee Parkway, Suite 750
Dallas, TX 75219
Phone: 469-484-6100
Fax: 469-828-7217

***Attorneys for Party-in-Interest and Intervenor, American International Industries***

# TABLE OF CONTENTS


SUMMARY OF ARGUMENT ........ 1

NATURE AND STAGE OF PROCEEDINGS ........ 3

STATEMENT OF THE ISSUE ........ 6

BACKGROUND ........ 7

1. A-I-I's Relationship with BMI. ........ 7
2. The Bankruptcy Court Has Already Found that the Causation Issues Presented by the Talc Claims Are Central to the Bankruptcy Case and Warrant Resolution in a Single Forum. ........ 9

ARGUMENT ........ 10

1. The Eight Talc Claims Should Be Transferred to this Court under 28 U.S.C. § 157(b)(5). ........ 10
   - a. Each Talc Claim involves the same product (BMI talc) and the same injury (mesothelioma). ........ 13
   - b. Consolidation and transfer of the Talc Claims would efficiently resolve the common general causation issues. ........ 14
2. This Court Has "Related to" Jurisdiction over the Eight Talc Claims. ........ 15
   - a. Clubman is made solely with BMI talc; thus, A-I-I and BMI have a "unity of identity." ........ 17
   - b. A-I-I holds contractual written warranty, indemnity, and contribution claims against BMI, which create an "identity of interest." ........ 18
3. This Court Should Hear the Eight Talc Claims. ........ 21
   - a. Mandatory abstention is inapplicable. ........ 21
   - b. Permissive abstention would contradict the findings already made by the Bankruptcy Court and this Court. ........ 23
4. Under Section 157(b)(5), this Court May Fix Venue for Claims Even If They Have been Remanded. ........ 25

CONCLUSION ........ 25

## SUMMARY OF ARGUMENT

A-I-I is a family-owned partnership that operates from a single location with fewer than 800 employees. A-I-I made certain personal care products, including Clubman Talcum Powder ("Clubman"), which contained BMI talc. When Clubman was blended with talc, the talc was supplied by BMI exclusively. In 2017, A-I-I ceased using talc in Clubman due to what it considers baseless litigation.

BMI sought Chapter 11 protection in the United States Bankruptcy Court for the Southern District of Texas as a result of claims alleging that its talc caused personal injury and wrongful death. BMI was a talc miner and manufacturer; it did not make finished consumer products. As a downstream blender of a product made with BMI talc, A-I-I is routinely named as a co-defendant in the same lawsuits that gave rise to BMI's bankruptcy. These claims, which are premised on consumer use of Clubman Talcum Powder, are, in essence, claims against BMI talc.

A-I-I's Talc Claims raise the identical threshold question this Court has already undertaken to decide in BMI's bankruptcy: Whether BMI talc (which was used in Clubman) contained asbestos in sufficient quantity and form to cause mesothelioma or other asbestos-related disease (the "Referred Question"). On Judge Isgur's recommendation, this Court partially abated the bankruptcy proceeding precisely so that this common, dispositive causation question could be resolved in a single, centralized forum. In the Abatement Order and Report and Recommendation (the "AORR"), Judge Isgur expressly found that the issue directly impacts administration of the Bankruptcy

Cases, the value of claims against the Estate, the feasibility of any plan, and the resolution of future claims. He further concluded that the issue is common to all claimants and central to the bankruptcy proceeding itself. (Dkt. No. 1; Dkt. No. 42).[2] Thus, the Bankruptcy Court has already determined that resolution of the general causation issue will affect the Debtors' Estate and has effectively concluded that the resulting litigation is "related to" the Bankruptcy Cases.

Permitting the same question to be litigated simultaneously in state courts across the country is duplicative, wasteful, and threatens inconsistent results on overlapping issues of fact, law, and science—to the detriment of the Debtors' Estate and its claimant creditors, including A-I-I. Congress provided a mechanism to avoid that result in 28 U.S.C. §§ 157(b)(5) and 1334(b). Under these provisions, this Court has "related to" jurisdiction over, and may fix venue for (and effectively transfer), personal injury and wrongful death claims that affect the debtor's estate.

This Court should not abstain. A-I-I's Talc Claims are personal injury and wrongful death actions that Congress specifically exempted from mandatory abstention, and the strong statutory presumption favoring transfer under § 157(b)(5)—"[t]ransfer should be the rule, abstention the exception"[3]—forecloses permissive abstention here. Fixing venue in this Court will allow the common threshold causation issues to be resolved once, consistently, and efficiently, in the very forum this Court has already designated for that

[2] References to the docket in the bankruptcy case before Judge Isgur will be identified as "Bankr. Dkt. No. 1." References to the docket in this matter will be identified as "Dkt. No. 42"
[3] *In re Pan American Corp.*, 950 F.2d 839, 845 (2d Cir. 1991).

purpose, and in coordination with the BMI bankruptcy. Accordingly, A-I-I respectfully requests that the Court transfer and fix venue for the eight Talc Claims in this District.

**NATURE AND STAGE OF PROCEEDINGS**

1. BMI and its affiliate Barretts Ventures Texas LLC (collectively "Debtors") each commenced Chapter 11 cases on October 2, 2023, in the Bankruptcy Court. (Bankr. Dkt. No. 1).

2. Plaintiff Marvin Fields, now deceased, filed his lawsuit in the Superior Court of New Jersey Law Division, Middlesex County, on December 30, 2019. It is not trial set. Fields' Proof of Claim in the Chapter 11 cases is listed as Schedule No. 2630082.[4]

3. Plaintiff Christine Kopp, on behalf of Decedent John Kopp, filed suit in the Supreme Court of the State of New York, County of Suffolk, on July 27, 2020. Her case is not trial set. Kopp's Proof of Claim is listed as Schedule No. 2630256.[5]

4. Plaintiff Alison Holtermann filed suit on behalf of Patricia Holtermann, deceased, in the Supreme Court of the State of New York, County of New York, on March 24, 2021. This case has a September 23, 2026, trial date, which is not anticipated to commence until 2027.[6] Holtermann's Proof of Claim is listed as Schedule No. 2630168.[7]

---

[4] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 2, Plaintiff Marvin Fields' original and operative complaints.

[5] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 3, Plaintiff Christine Kopp's original and operative complaints.

[6] The trial setting is simply an assignment to the jury room. The assignment does not mature until the case reaches the top of court's trial queue. The current prediction is that it will take three to five months to reach the front of the queue.

[7] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 4, Plaintiff Alison Holtermann's original and operative complaints.

5. Plaintiff Sarah Sue Nelson filed her lawsuit in the Superior Court of New Jersey Law Division, Middlesex County, on February 28, 2022. It is not trial set. Nelson's Proof of Claim is listed as Schedule No. 2630300.[8]

6. Plaintiff Janice Parvin filed suit in the Superior Court of New Jersey Law Division, Middlesex County, on June 27, 2022. Her case is set for trial on April 5, 2027. Parvin's Proof of Claim is listed as Schedule No. 2630301.[9]

7. Plaintiff Barbara Westover filed suit in the Superior Court of New Jersey Law Division, Middlesex County, on July 6, 2022. Her case is not trial set. Westover's Proof of Claim is listed as Schedule No. 2630485.[10]

8. Plaintiffs Jack and Dianne LaSalle filed suit in the Superior Court of California, Alameda County, on September 27, 2022. Following a forum non conveniens motion, the LaSalles re-filed in the Superior Court of Washington, King County, where the case is currently pending as a wrongful death action with a November 2, 2026, trial date. The LaSalles' Proof of Claim is listed as Schedule No. 2630268.[11]

---

[8] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 5, Plaintiff Sarah Sue Nelson's original and operative complaints.

[9] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 6, Plaintiff Janice Parvin's original and operative complaints.

[10] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 7, Plaintiff Barbara Westover's original and operative complaints.

[11] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 8, Plaintiffs Jack and Dianne LaSalle's original and operative complaints.

9. Plaintiff Cynthia O'Beirne filed her lawsuit in the Commonwealth of Massachusetts, Middlesex SS., Superior Court Department of the Trial Court, on April 17, 2024. It is not trial set. She filed her Proof of Claim on July 29, 2025.[12]

10. A-I-I filed its Proof of Claim on May 6, 2024,[13] asserting broad contractual and equitable rights of warranty, indemnity, and reimbursement relating to the talc BMI supplied to A-I-I with written assurances that, among others, the "product conforms to current USP [United States Pharmacopeia] Monograph requirements for talc" and is free of "regulated" or "detectable" asbestiform minerals."[14]

11. On May 14, 2025, the Bankruptcy Court issued its AORR referring the question of "whether any of the talc sold by [BMI] contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases" (the "Referred Question") to this Court. (Bankr. Dkt. No. 1479 at 1).

12. A-I-I initially moved to intervene pursuant to Bankruptcy Rule 2018 and the AORR on July 17, 2025. (Dkt. No. 8). On March 18, 2026, this Court denied as premature A-I-I's motion but stated: "[A-I-I] may reassert its motion to intervene if the Court decides to accept Judge Isgur's report and recommendation." (Dkt. No. 39).

13. On June 22, 2026, this Court accepted and adopted Judge Isgur's AORR. (Dkt. No. 42.)

---

[12] *See* Exhibit 1, Spreadsheet of Talc Claims; *see also*, Exhibit 9, Plaintiff Cynthia O'Beirne's original and operative complaints.
[13] *See* Exhibit 10, A-I-I Proof of Claim
[14] *See* Exhibit 11, Certificate of Analysis and Analysis Master Report from BMI to A-I-I; *see also*, Exhibit 12, Letter from BMI to A-I-I.

14. On July 1, 2026, A-I-I renewed its motion to intervene. (Dkt. No. 46). Recognizing A-I-I's direct stake in the resolution of the common causation issues, on August 4, 2026, this Court granted A-I-I's motion and authorized its participation in the general causation proceeding. This Court held that A-I-I is a party-in-interest pursuant to 11 U.S.C. § 1109(b) and Federal Rule of Bankruptcy Procedure 2018, broad participation is intended in this matter, and it would serve the interests of justice for A-I-I to fully participate. (Dkt. No. 84).

15. Contemporaneously with this Motion, A-I-I's Notices of Removal pursuant to 28 U.S.C § 1452 are being filed in the United States District Courts for the districts where the Talc Claims are pending.[15] Federal subject matter jurisdiction exists over those claims under 28 U.S.C. § 1334(b) because each is related to BMI's bankruptcy. A-I-I's Notices of Removal advise the state and district courts that A-I-I is filing this Motion and request deferral of consideration of any motion to remand pending this Court's ruling.

16. The Talc Claims against A-I-I should accordingly be transferred to this Court where they should be litigated, stayed, or otherwise resolved in connection with this Court's determination of the Referred Question.

## STATEMENT OF THE ISSUE

Whether this Court should transfer venue of the eight Talc Claims against A-I-I to this Court pursuant to 28 U.S.C. § 157(b)(5).

---

[15] District of New Jersey (*Fields, Parvin, Westover, Nelson*); Eastern District of New York (*Kopp*); Southern District of New York (*Holtermann*); District of Massachusetts (*O'Beirne*); Western District of Washington (Seattle) (*LaSalle*). *See* Exhibit 1, Spreadsheet of Talc Claims. A-I-I will provide the Court with the federal case numbers after the Notices of Removal are filed.

## BACKGROUND

### 1. A-I-I's Relationship with BMI.

BMI was the exclusive supplier of talc to A-I-I. With each shipment of talc, BMI provided a written certificate of analysis certifying to A-I-I that, among others, the "product conforms to current [United States Pharmacopeia] Monograph requirements for talc" and is free of "regulated" or "detectable" asbestiform minerals."[16]

This lot number of talc complies with USP / EP / JP Harmonized Specifications
*This product conforms to current USP Monograph requirements for talc and is suitable for oral or topical administration*
No Class 1, 2 or 3 solvents as defined in ICH Guidelines Q3C and USP/NF Pharmacopeia are used in the manufacturing process of these products.
APPEARANCE: FINE WHITE POWDER
Please be advised that the BARRETTS MINERALS Montana talc(s) which you have purchased contain no detectable quantities of any of the asbestiform minerals, as tested by XRD and TEM.
* These values are not analyzed on each lot, but are based on quarterly composite testing

Approved: BARRETTS MINERALS LABORATORY — Title: LAB TECHNICIAN
Phone: (406) 683-3322

A-I-I relied on these warranties. Any plaintiff's claim that Clubman caused an asbestos-related injury necessarily depends on the content of BMI's talc—the same talc, and the same causation question, at issue in the BMI bankruptcy.

Although A-I-I vigorously disputes that (i) BMI's talc contained regulated or detectable levels of asbestos, (ii) Clubman caused any plaintiff's alleged injuries, or (iii) A-I-I bears liability to any plaintiff, if BMI's certifications were false, A-I-I holds contractual and equitable claims against BMI for breach of warranty, indemnity, contribution, and potentially fraud or misrepresentation.

---

[16] *See* Exhibit 11, Certificate of Analysis and Analysis Master Report from BMI to A-I-I; *see also*, Exhibit 12, Letter from BMI to A-I-I.

These rights directly impact the administration of the bankruptcy case, the value of claims against the Estate, the feasibility of any plan, and the resolution of future claims. If A-I-I is held liable in a Talc Claim for an injury caused by a product made with BMI talc, A-I-I's recourse against BMI—under the Debtors' proposed plan—would be a claim against the Talc Personal Injury Trust (the "Trust"). The Debtors' proposed Joint Plan of Reorganization defines "Indirect Talc Personal Injury Claim" to include any claim for contribution or indemnity,[17] and defines "Talc Personal Injury Claim" to include an Indirect Talc Personal Injury Claim.[18] Under the plan's classification, Class 3 "Talc Personal Injury Claims" are impaired and entitled to vote, and Section 3.2(c)(iii) provides that each holder of a Talc Personal Injury Claim is entitled to vote to accept or reject the plan.[19] The proposed plan thus expressly recognizes A-I-I, as an indirect tort claimant holding indemnity and contribution rights, as a party in interest whose claims are claims against the Estate.

Perhaps more importantly, here, the eight plaintiffs have filed Proofs of Claim against BMI and are concurrently pursuing state court actions against A-I-I. There is no bar date for Talc Personal Injury Claims, so it is likely other plaintiffs with personal injury and/or wrongful death actions against A-I-I will file Proofs of Claim against BMI. Additionally, future plaintiffs/claimants will file claims directly against the Trust and separately sue A-I-I for the same injury caused by the same talc. In each instance, the state

---

[17] *See* The Debtors' Proposed Plan, Bankr. Dkt. No. 1353 at p. 10.
[18] *Id*. at p. 15-16.
[19] *Id* at p. 22-23.

court actions pose a concrete risk of duplicate payments from the Estate: once directly to the plaintiff/claimant, and once to A-I-I on its indemnity claim for the very same injury.

An adverse causation finding will make verdicts against A-I-I more likely, and each such verdict becomes the basis for an indemnity or contribution claim against the Estate. Such a finding would also result in direct claims by A-I-I against the Estate for breach of warranty and possibly fraud or misrepresentation.

**2. The Bankruptcy Court Has Already Found that the Causation Issues Presented by the Talc Claims Are Central to the Bankruptcy Case and Warrant Resolution in a Single Forum.**

On June 22, 2026, this Court accepted and adopted Judge Isgur's recommendation that the reference be withdrawn to determine a gating issue. (Dkt. No. 42).[20] That general causation question—whether "any talc sold by [BMI] contained sufficient quantity and form of asbestos to potentially cause mesothelioma or other asbestos-related diseases"—is now pending before this Court and, as the Bankruptcy Court explicitly recognized, is **"a matter that directly impacts the administration of the bankruptcy case . . . the value of claims, and resolution of any future asbestos claims**." (emphasis added). (Bankr. Dkt. No. 1479 at p. 5).

Judge Isgur emphasized the urgency of centralized resolution noting that, "a process involving hundreds of separate trials will drain available resources from the estate such that actual victims would receive less recovery," while "[a] single determination of this

---

[20] The Bankruptcy Court otherwise retained jurisdiction over the Chapter 11 Cases and continues to administer matters not encompassed by the Referred Question. *See* Dkt. No. 81 (authorizing Bankruptcy Court to continue adjudicating specified administrative matters during abatement and confirming withdrawal of reference applies only to referred matter and does not affect structure or administration of bankruptcy proceeding).

threshold issue will reserve more available resources and yield a higher recovery for the claimants." (Bankr. Dkt. No. 1479 at 3.) The Bankruptcy Court expressly invoked 28 U.S.C. § 157(b)(5) as the statutory basis for its recommendation and quoted the provision's mandate that, "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending." (*Id*. at 3–4.)

These findings are significant here. The Bankruptcy Court has already determined that resolution of the Referred Question directly affects the administration of BMI's Estate, the value of claims asserted against it, and the feasibility of any eventual plan. The Talc Claims raise the same general causation issue and therefore implicate the same bankruptcy interests that prompted Judge Isgur's recommendation and this Court's withdrawal of the reference. Allowing parallel adjudication of the Referred Question in state courts across the country would create precisely the inefficiencies, duplication, and risk of inconsistent determinations that the Court-ordered causation proceeding was designed to prevent.

## ARGUMENT

### 1. The Eight Talc Claims Should Be Transferred to this Court under 28 U.S.C. § 157(b)(5).[21]

This Court, as the District Court where BMI's Bankruptcy Cases are pending, is solely responsible for determining where the Talc Claims should be litigated. *See Whittingham v. CLC of Laurel, LLC*, No. 2:06CV11-KS-MTP, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("… § 157(b)(5) leaves little doubt that the ultimate venue of

[21] Section 157(b)(5) grants this Court the power to fix venue for the Talc Claims; the cases discussing this power use the terms "fix venue" and "transfer" interchangeably, and so does A-I-I.

the trial in the personal injury case should be determined by the District Court where the bankruptcy case is pending."). 28 U.S.C. § 157(b)(5) allows this Court to transfer and centralize cases related to a debtor's estate into a single forum regardless of where the lawsuits are pending.[22]

Courts have long recognized the benefits of using § 157(b)(5) to aggregate nationwide personal injury claims—both state and federal, and against debtors and non-debtors alike—into a single, centralized forum. In *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), for example, the court affirmed the centralization of thousands of state and federal personal injury cases against a debtor and its non-debtor co-defendants in the district where the bankruptcy was pending, concluding that it was "obviously in the interest of the class of claimants as a whole to obviate the tremendous expense of trying these cases separately" and that centralization would ensure the "fair and non-preferential resolution" of the claims. *Id.* at 1011-14; *see also, In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996) (consolidation under § 157(b)(5) will "further the prompt, fair, and complete resolution of all claims 'related to' bankruptcy proceedings, and harmonize Section 1334(b)'s broad jurisdictional grant with the oft-stated goal of centralizing the administration of a bankruptcy estate"); *In re New England Compounding Pharm, Inc. Prod. Liab. Litig.*, 496 B.R. 256, 273 (D. Mass 2013) (ordering transfer of personal injury claims against non-debtor defendants pursuant to section 157(b)(5) because such transfer

[22] "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5).

was "the most efficient use of the limited resources of the judicial system, and the fairest and most efficient distribution of the assets of the estate").

The Sixth Circuit in *Dow Corning*, a case on all fours with this one, approved the transfer and centralization of state and federal personal injury claims against non-debtor co-defendants under § 157(b)(5). Dow Corning manufactured and provided raw silicone materials to manufacturers to create silicone gel breast implants. Tens of thousands of implant recipients sued Dow Corning and other non-debtor manufacturers and suppliers alleging autoimmune reactions to the implants. Following Dow Corning's bankruptcy, the Sixth Circuit allowed the transfer of claims against non-debtor manufacturers under section 157(b)(5), finding that centralization helped "further the prompt, fair, and complete resolution of all claims 'related to' bankruptcy proceedings." 86 F.3d at 496-497 (the purpose of § 157(b)(5) is "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'") (quoting *A.H. Robins*, 788 F.2d at 1011).

The Fifth Circuit has likewise recognized that § 157(b)(5)'s transfer provisions "may in certain circumstances be applicable to multiple non-debtor co-defendants" where claims are related to a bankruptcy proceeding. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 (5th Cir. 2001). *Arnold* acknowledges § 157(b)(5)'s applicability to "related to" cases against non-debtors and outlines the circumstances for when proceedings should be transferred. *Id*. at 440 & n.12. In contrasting *Arnold's* facts against *A.H. Robins* and *Dow Corning*, the Fifth Circuit explained that courts considering transfer and consolidation under section 157(b)(5) should "balance each case individually … for the relationship or

unity of identity of the co-defendants and the debtor(s), the uniformity of source of the injury or wrongful death, and the general status of pending cases in the state courts and the effect a consolidation would have on them." *Id.* at 440 n.12.

Like these cases, transfer of the eight Talc Claims to this Court under § 157(b)(5) is not merely appropriate, it is necessary to effectuate the very purpose for which the general causation proceeding was created. A-I-I's Talc Claims all turn on the same threshold issue this Court has already undertaken to decide: whether BMI talc contained asbestos in sufficient quantity and form to cause mesothelioma or other asbestos-related disease. Indeed, the circumstances here are stronger than in *A.H. Robins* or *Dow Corning* because this Court is not being asked to centralize litigation in the first instance. The Bankruptcy Court has already found that the Referred Question is common to all claimants and that it directly impacts the administration of the bankruptcy case, the value of claims against the Estate, the feasibility of any plan, and the resolution of future claims. It specifically invoked § 157(b)(5) in recommending withdrawal of the reference so that this Court could resolve the causation issue. This Court accepted the AORR for that precise purpose.

**a. Each Talc Claim involves the same product (BMI talc) and the same injury (mesothelioma).**

Importantly, just as in *Dow Corning*, there is a clear unity of identity[23] between A-I-I and BMI, as well as a uniform source of the injury or wrongful death. In *Arnold*, the

[23] "Unity of identity" between the debtor and non-debtor is not related to corporate identity, governance, or structure. Rather, it is the circumstances surrounding how the product was created and handled by the market that creates a unity of identity between a debtor and non-debtor co-defendants. *See Arnold*, 278 F.3d at 440.

Fifth Circuit highlighted the importance of this relational factor, referencing *Dow Corning* where the Sixth Circuit found non-debtors and debtor were "closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially the same injuries." *Arnold*, 278 F.3d at 440.

BMI supplied 100 percent of the talc that A-I-I blended into its Clubman product. With each shipment of talc, BMI provided express assurances that, among others, the talc it supplied "conforms to the specifications for talc in the United States Pharmacopeia" and meets the requirements for an "absence of asbestos."[24] A-I-I relied on these warranties and did not alter BMI's talc when blending its Clubman product. Nonetheless, both A-I-I and BMI face personal injury claims for purportedly asbestos-contaminated BMI talc.

**b. Consolidation and transfer of the Talc Claims would efficiently resolve the common general causation issues.**

A-I-I is not seeking to consolidate and transfer all its talc claims.[25] Its request is limited to the eight plaintiffs who have filed Proofs of Claim in these Chapter 11 cases. Almost all the state court cases have been pending for four to five years (or more)—including *Fields, Kopp, Holtermann, Nelson, Parvin, Westover,* and *LaSalle*—and only one has a trial date that is expected to commence before the end of the year (*LaSalle*).[26] The

[24] *See* Exhibit 11, Certificate of Analysis and Analysis Master Report from BMI to A-I-I; *see also*, Exhibit 12, Letter from BMI to A-I-I.

[25] Similarly, A-I-I is not seeking to remove plaintiffs' claims against the co-defendants. The Notices of Removal make clear that A-I-I is removing only the claims against it. To the extent any action is inadvertently removed in full, the claim against A-I-I can be severed and plaintiffs may proceed against the other defendants. Thus, consolidation and transfer of the eight Talc Claims against A-I-I can be effectuated without impacting plaintiffs' claims against the other defendants in the state court proceedings.

[26] Failure to transfer the *LaSalle* claim may imminently interfere with the Bankruptcy Cases, including resolution of the Referred Question.

most recently filed case, *O'Beirne*, which was initiated in 2024, is not trial set. Thus, for the most part, consolidation and transfer would aid in a speedy resolution of otherwise quite stagnant Talc Claims.[27]

Allowing these Talc Claims to move forward in state court would directly interfere with the Bankruptcy Cases. For any of the plaintiffs to prevail, they must prove that the talc sold by BMI and incorporated into A-I-I's Clubman was, in fact, contaminated with asbestos at a causative level. This, however, is the exact issue this Court has been tasked with adjudicating.

Permitting the same general causation question to be litigated simultaneously in courts across the country would undermine the very rationale for the Court-ordered proceeding and would negatively affect BMI's Estate. Fixing venue in this Court will ensure that the dispositive issues are resolved in coordination with the bankruptcy proceeding and preserve Estate assets. The eight Talc Claims should accordingly be transferred to this Court under 28 U.S.C. § 157(b)(5).

**2. This Court Has "Related to" Jurisdiction over the Eight Talc Claims.**

28 U.S.C. § 1334(b) grants the district courts original jurisdiction over "all civil proceedings . . . related to cases under title 11." "Related to" jurisdiction represents the broadest of the potential paths to bankruptcy jurisdiction. A proceeding is "related to" a bankruptcy if it "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *accord In re Wood*,

---

[27] See, e.g., Exhibit 1, Spreadsheet of Talc Claims.

825 F.2d 90, 93 (5th Cir. 1987) (adopting the *Pacor* "conceivable effect" test in the Fifth Circuit).[28] "Certainty, or even likelihood," of an effect on the estate is not required; the key word is "conceivable."

The Supreme Court has endorsed the test for "related to" jurisdiction first articulated by the Third Circuit in *Pacor*: a civil proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 & n.6 (1995). The proceeding "need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

In this case, the Court need not determine the "related to" issue on a blank slate. The Bankruptcy Court has already found that the threshold causation issue presented by claims arising from BMI's talc directly affects administration of the Bankruptcy Cases, the value

[28] In the Fifth Circuit, "related to" jurisdiction is broad and covers "any litigation where the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *In re KSRP, Ltd.*, 809 F.3d 263, 267 (5th Cir. 2015) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010)). Courts routinely find personal injury and tort claims against non-debtors are related to chapter 11 proceedings. *See, e.g., id*. at 267 (finding third-party litigation between non-debtors gave rise to "related to" jurisdiction because of potential indemnity claims against debtor); *In re Wood*, 825 F.2d at 93-94 (concluding third-party litigation between non-debtors gave rise to "related to" jurisdiction because although the suit "may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no conceivable effect").

of claims against the Estate, the feasibility of any plan, and the resolution of future claims. The Bankruptcy Court further concluded that the issue is common to all claimants and sufficiently central to the bankruptcy proceeding to warrant withdrawal of the reference and centralized adjudication by this Court pursuant to 28 U.S.C. § 157(b)(5).

Those findings establish the requisite nexus between A-I-I's Talc Claims and BMI's Estate. The Talc Claims present the very same question of general causation the Bankruptcy Court identified as directly affecting claim valuation, Estate administration, and plan feasibility.[29] Accordingly, the connection between A-I-I's Talc Claims and the Bankruptcy Estate is neither hypothetical nor attenuated; it has already been recognized by the Bankruptcy Court and accepted by this Court.

**a. Clubman is made solely with BMI talc; thus, A-I-I and BMI have a "unity of identity."**

Courts exercise "related to" jurisdiction where the debtor and a non-debtor co-defendant share a "unity of identity" through a common product. In *Arnold*, the Fifth Circuit recognized that in *In re Dow Corning*, "a claim of contribution by the co-defendants against Dow Corning, even if only intended and not yet asserted, was sufficient to invoke 'related to' bankruptcy jurisdiction" where the co-defendants were "closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries." *Arnold*, 278 F.3d at

---

[29] *See In re Nutraquest, Inc.*, Case No. 03-5869, 2004 U.S. Dist. LEXIS 29143, at *41 (D.N.J. Mar. 5, 2004) (finding "related to" jurisdiction in action between plaintiff and non-debtor because "the issues of causation and damages will be decided in the tort action, [and] any disposition of these issues will be related to a determination of [the] Debtor's liability[.]").

435, 440 (discussing *In re Dow Corning Corp.*, 86 F.3d at 498). That "unity of identity" describes A-I-I's downstream talc relationship with BMI—a relationship the plaintiffs have conceded imparts "related to" jurisdiction.[30]

*Dow Corning* invoked "related to" jurisdiction over thousands of claims against non-debtor manufacturers where the debtor supplied a raw material—silicone—that was incorporated into the non-debtors' products. 86 F.3d at 493-94. So too here. BMI supplied the raw material—talc—that was incorporated into A-I-I's Clubman products. Thus, A-I-I's talc is BMI's talc, and every Talc Claim against A-I-I is, at its core, a claim that BMI's talc caused injury.

**b. A-I-I holds contractual written warranty, indemnity, and contribution claims against BMI, which create an "identity of interest."**

In upholding the district court's authority under 28 U.S.C. §§ 157(b)(5) and 1334(b) to fix venue for and try all personal injury and wrongful death actions "related to" the Chapter 11 case, *A.H. Robins* explains that "related to" jurisdiction "arises when there is such identity between the debtor and the third-party defendant that the debtor may be said

[30] Earlier in the Bankruptcy Cases, the Debtors' parents (who allegedly tested talc on BMI's behalf) removed the state court action "*Maricich*." On motion to remand, plaintiffs argued the absence of contractual or equitable indemnity rights running from BMI to its parents required remand: Debtors' parents "cannot identify any contractual or equitable indemnity rights whereby [BMI] needed to indemnify [its parents] for their own misconduct. On the contrary, [BMI] relied upon [its parents] to test and certify the talc." *See* Exhibit 13, relevant portions of Pl.'s Mot. to Remand, Dkt. No. 8, at 21, *Maricich v. Chattem et al.*, No. 4:25-cv-03198 (S.D. Tex. Jul. 11, 2025). A-I-I, a downstream product maker, is the mirror image: It bought BMI's talc, relied upon BMI to test and certify that talc (and received written warranties from BMI), and faces suit for injuries caused by BMI's talc. This generates the classic contractual and equitable indemnity rights that the Debtors' parents lacked. Plaintiffs thus concede that a defendant with indemnity rights against BMI would satisfy the conceivable-effect test and, by extension, the variable plaintiffs argued was lacking for the Debtors' parents to create "related to" jurisdiction is present in A-I-I's case.

to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," with "a suit against a third-party who is entitled to absolute indemnity by the debtor" as the paradigm. 788 F.2d at 1014 (finding identity of interest with respect to claims arising out of use of a single device manufactured by the debtor); *see also, In re W.R. Grace & Co.*, 386 B.R. 17, 30-32 (Bankr. D. Del. 2008) (finding identity of interest where debtor's conduct and operations were "at the core" of third-party claims against non-debtors). *A.H. Robins* warned that, otherwise, the indemnitee would face "inconsistent judgments" and see "his contract of indemnity in effect nullified." 788 F.2d at 1000.

Here, A-I-I holds contractual written warranty, indemnity, and contribution rights against BMI's Estate arising from the same talc-related liabilities that are the focus of the state court Talc Claims.[31] BMI's written assurance that the talc complied with a standard, the USP Monograph for Pharmaceutical Talc, is a written warranty under UCC 2-313.[32] Also, as in *A.H. Robins*, due to the identity of interest between A-I-I and BMI, any adverse judgment or resolution of the Talc Claims will, in effect, be a judgment or finding against BMI and will directly impact the Bankruptcy Estate. Even if there were a defense verdict, A-I-I would seek the costs of having to defend BMI's product, largely as a result of BMI failing to defend it. Ultimately, BMI's written warranty that its talc complied with a specific

[31] BMI warrantied that the talc it supplied to A-I-I was pharmaceutical grade and free of regulated asbestiform minerals.

[32] See Tex. Bus. & Com. Code § 2.313(a), which adopted UCC 2.313 ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").

industry standard—the USP Monograph on Pharmaceutical Talc, with its asbestos testing standard—gives A-I-I automatic breach of written warranty rights against the Debtors.

As a corollary, these cases will affect the Bankruptcy Estate because they present an opportunity for double recovery. Each of the eight plaintiffs have filed a Proof of Claim against BMI. The plaintiffs' redundant claims—in both state and bankruptcy court—over the same injury (mesothelioma) and the same product (Clubman blended with BMI talc) make it highly probable that the Estate will issue payment directly to the eight plaintiffs (to resolve the Proofs of Claim) and also to A-I-I (to reimburse it for litigation costs and/or settlement funds paid to the eight plaintiffs for the same injury).

As *A.H. Robins* warns, if this Court does not exercise "related to" jurisdiction to fix venue for the eight Talc Claims, A-I-I faces inconsistent judgments in the state courts and could see its warranty and indemnity rights essentially nullified in the Bankruptcy Court. Moreover, this possibility of inconsistent judgments or findings could relate to the very causation issue this Court is deciding, which would require later exercise of the Bankruptcy Court's equitable powers. For example, if a state court returns a verdict against A-I-I finding disease-causing asbestos in the talc used to make Clubman and enters judgment, but this Court finds the opposite, the Bankruptcy Court will have to decide whether to pay indemnity for a verdict based on a factual finding diametrically opposed to the finding made by the federal district court in connection with the bankruptcy proceeding. Likewise, if this Court determines that BMI talc contained disease-causing asbestos, the eight plaintiffs (as well as all other plaintiffs with talc-related claims against A-I-I) will argue for preclusive effect in state cases. Because there is identity of parties in these eight cases,

once there is a determination in one case, the prevailing party will assert that it should also apply in the other case. If the claims are heard in both courts, this Court will inevitably spend time and resources sorting out conflicting issues from the same parties in two different fora.

Because Section 157(b)(5) is designed to prevent injustices and inefficiencies like this, which threaten inconsistent results on overlapping issues of fact, law, and science—to the detriment of the Debtors' Estate and its claimant creditors—A-I-I's Motion to fix venue for the eight Talc Claims should be granted.

**3. This Court Should Hear the Eight Talc Claims.**

Although 28 U.S.C. § 1334(c) provides two forms of abstention—mandatory and permissive—mandatory does not apply to personal injury or wrongful death claims, and "[t]ransfer should be the rule, abstention the exception" under § 157(b)(5). *See In re Pan Am.*, 950 F.2d at 845. This Court should accordingly hear the eight Talc Claims because permissive abstention would frustrate the efficient and equitable administration of BMI's Estate.

**a. Mandatory abstention is inapplicable.**

Sections 157(b)(4) and 157(b)(2)(B) together provide that personal injury or wrongful death claims are not subject to the mandatory abstention provision of § 1334(c)(2). *See* 28 U.S.C. § 157(b)(4). Instead, and as requested by A-I-I, the district court shall order these types of claims to be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending. *See* 28 U.S.C. § 157(b)(5).

Importantly, many courts have held that the above exception applies to non-debtors, and there is a strong line of cases extending the exception to claims against non-debtors that implicate contractual indemnity or common law contribution claims against the estate. The court in *In re New England Compounding Pharm*, 496 B.R. at 270-272, for example, explained that the exception to mandatory abstention encompasses "not only personal injury and wrongful death claims, but also claims for contribution or indemnity that derive from personal injury or wrongful death claims," because indemnity claims "are simply procedural vehicles for asserting liability against the estate for some underlying harm," and a narrower reading "would create a potentially gaping loophole in the carefully crafted system for the orderly administration of bankruptcy estates." *Id*. at 72 ("Even in the absence of contractual indemnity agreements, the third-party defendants in the pending state-court actions may have claims for contribution or common-law indemnity from [Debtor] in the event that they are found liable in state court. Those potential state-court verdicts pose the type of threat Congress had in mind when it crafted the exception to § 1334(c)(2) ....").[33]

A-I-I's personal injury and wrongful death Talc Claims, in combination with the nature of the indemnity and warranty relationship as well as the degree of identity between A-I-I and BMI (such that a judgment against A-I-I is, in practical effect, a judgment against

[33] See also, *Berry v. Pharmacia Corp*., 316 B.R. 883, 889 (S.D. Miss. 2004): "[G]iven the nature of the relationship and degree of identity between the debtor [and the third-party defendant], the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [third-party defendant]… [Third-party defendant] claims a right to absolute indemnity from [debtor] for any judgment that might be rendered against it, so that a judgment against [third-party defendant] is, in practical effect, a judgment against [third-party defendant]."

BMI), fall squarely within the exception. Mandatory abstention is neither triggered nor appropriate.

**b. Permissive abstention would contradict the findings already made by the Bankruptcy Court and this Court.**

Permissive abstention is likewise unwarranted. Although a court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law" (28 U.S.C. § 1334(c)(1)), courts have questioned whether permissive abstention is even proper in connection with a § 157(b)(5) transfer and have held it should be "rarely invoked" in these circumstances. *See In re Pan Am.*, 950 F.2d at 844-45 (abstention of personal injury claims related to a bankruptcy "may be contravening the legislative history" of Section 157(b)(5)). The Fifth Circuit confirmed "that § 157(b)(5) was intended to confer new power upon the district court in which a bankruptcy is pending to *qualify* the choice of venue made by a plaintiff . . . ." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 834 (5th Cir. 1993) (emphasis added).[34]

---

[34] Courts in the Southern District of Texas consider non-exclusive factors when conducting a permissive abstention analysis: (1) Effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention; (2) Extent to which state-law issues predominate over bankruptcy issues; (3) Difficult or unsettled nature of applicable law; (4) Presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (5) Jurisdictional basis, if any, other than bankruptcy jurisdiction; (6) Degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) The substance rather than the form of an asserted core proceeding; (8) The feasibility of severing state-law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) The burden of the bankruptcy court's docket; (10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) The existence of a right to a jury trial; (12) The presence in the proceeding of non-debtor parties; (13) Comity; and (14) Possibility of prejudice to other parties in the action. *In re EP Energy E&P Co.*, 752 F. Supp. 3d 647, 661 (S.D. Tex. 2024).

The Bankruptcy Court has already found that the general causation issue presented by claims arising from BMI's talc directly affects administration of the Bankruptcy Cases, the value of claims against the Estate, plan feasibility, and future claims. The Bankruptcy Court further concluded that the issue is common to all claimants and expressly invoked § 157(b)(5) in recommending centralized adjudication before this Court. This Court accepted that recommendation and withdrew the reference for that purpose.

Under such circumstances, abstention would not promote judicial economy, comity, or the interests of justice. It would do the opposite. The Talc Claims present the same threshold causation issue this Court is already adjudicating. Permitting that issue to proceed simultaneously before multiple state courts would create the precise risk of inconsistent factual and scientific determinations that prompted the Bankruptcy Court's recommendation in the first place. It would also duplicate discovery, increase litigation expenses, and complicate administration of the Estate.

Nor do considerations of state law favor abstention. Congress specifically enacted § 157(b)(5) to centralize personal injury and wrongful death litigation related to bankruptcy cases—despite the fact that such claims ordinarily arise under state law. Likewise, no party's jury-trial rights are impaired by fixing venue in this Court because § 157(b)(5) concerns the forum in which such claims are tried, not whether they may be tried before a jury.

Finally, this Motion is not an exercise in forum shopping. A-I-I seeks transfer of only eight Talc Claims—in each of which the plaintiff has already submitted to jurisdiction by filing a Proof of Claim—so it may litigate the common causation issue in the forum

designated by the Bankruptcy Court and this Court to address that issue. The Bankruptcy Court has already determined that centralized resolution of the Referred Question will preserve Estate resources and promote a more efficient and equitable administration of claims. Abstention would simply recreate the very inefficiencies that the Court-ordered causation proceeding was intended to avoid.

**4. Under Section 157(b)(5), this Court May Fix Venue for Claims Even If They Have been Remanded.**

To the extent any state court remands a Talc Claim before this Court rules, that remand does not diminish this Court's power to fix venue under § 157(b). Courts have recognized that a district court may consider transfer under § 157(b) regardless of decisions reached by other courts on transfer and remand issues. Through its removal filings, A-I-I is alerting the relevant courts to this Motion and requesting a stay of consideration of any motion for remand pending this Court's ruling.

## CONCLUSION

For the foregoing reasons, A-I-I respectfully requests that the Court transfer and fix venue in this Court for the eight Talc Claims identified on Exhibit 1, thereby enabling an efficient, consolidated adjudication of the common threshold causation issues.

Dated: September 2, 2026

Respectfully submitted,

*/s/ Robert E. Thackston*

**Robert E. Thackston**
Texas Bar No. 00785487
S.D. Tex. ID No. 17568
robert.thackston@nelsonmullins.com

**Emily K. Nguyen**
Texas Bar No. 24143732
S.D. Tex. ID No. 3896600
emily.nguyen@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
3333 Lee Parkway, Suite 750
Dallas, TX 75219
Phone: 469-484-6100
Fax: 469-828-7217

***Attorneys for Party-in-Interest and Intervenor, American International Industries***

## CERTIFICATE OF CONFERENCE

In this unique context, where A-I-I seeks relief impacting parties who have not yet formally appeared before this Court, A-I-I respectfully requests that the Court waive the requirement of Court Procedure 6(B)(2) that all motions contain a certificate of conference. Counsel for A-I-I further acknowledges Court Procedure 6(B)(ii)'s requirement for a pre-motion conference before the filing of any motion "for a change of venue." To the extent that rule could be interpreted to apply to A-I-I's MOTION TO FIX VENUE FOR CLAIMS RELATED TO BMI'S BANKRUPTCY UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b), counsel asks that the Court relieve it of that requirement under these unique circumstances.

Dated: September 2, 2026

*<u>/s/ Robert E. Thackston</u>*
Robert E. Thackston

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users. This motion will also be attached as an exhibit to each of the Notices of Removal of the Talc Claims such that all counsel of record in the Talc Claims will also receive notice.

*/s/ Robert E. Thackston*
Robert E. Thackston

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re BMI OLDCO INC., *et al*.,** | §<br>§<br>§ | **Civil Action No. 4:25-cv-2193** |
| **Debtors.** | §<br>§<br>§ | **Bankruptcy Case No. 23-90794 (MI)** |

**AMERICAN INTERNATIONAL INDUSTRIES' APPENDIX TO MOTION TO FIX VENUE FOR CLAIMS RELATED TO BMI'S BANKRUPTCY UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b) AND BRIEF IN SUPPORT THEREOF**

| Exhibit & Tab No. | Description | PDF Page No. |
|---|---|---|
| 1 | Spreadsheet of Eight Talc Claims Pending Against American International Industries ("A-I-I") in Various State Court Jurisdictions | 1 |
| 2 | *Alduha Ibrahim Leon, as Administrator of the Estate of Marvin R. Fields, deceased v. American International Industries, et al.* original and operative complaints, filed in Superior Court of New Jersey Law Division, Middlesex County, Case No. MID-L-003126-22 AS. | 4 |
| 3 | *Christine Kopp, Individually, and as Personal Representative for the Estate of John R. Kopp v. American International Industries, et al.* original and operative complaints, filed in Supreme Court of the State of New York, County of Suffolk, Index No. 609596/20. | 41 |
| 4 | *Alison Holtermann, as Administrator for the Estate of Patrice A. Holtermann v. American International Industries, et al.* original and operative complaints, filed in Supreme Court of the State of New York, County of New York, Index No. 190058/21. | 160 |
| 5 | *Rhonda Ray Schaefer and Dawn Mari King as Co-Executors of the Estate of Sarahsue Nelson, deceased v. American International Industries, et al.* original and operative complaints, filed in Superior Court of New Jersey Law Division, Middlesex County, Case No. MID-L-001022-22 AS. | 278 |

| Exhibit & Tab No. | Description | PDF Page No. |
|---|---|---|
| 6 | *John G. Parvin, Individually and as Personal Representative of the Estate of Janice E. Parvin, Deceased v. American International Industries, et al.* original and operative complaints, filed in Superior Court of New Jersey Law Division, Middlesex County, Case No. MID-L-003126-22 AS. | 320 |
| 7 | *Barbara Westover and Darl Westover, Jr., H/W v. American International Industries, et al.* original and operative complaints, filed in Superior Court of New Jersey Law Division, Middlesex County, Case No. MID-L-003011-22 AS. | 371 |
| 8 | *Dianne LaSalle, individually, as Personal Representative of the Estate of the Decedent Jack LaSalle, and on behalf of all wrongful death beneficiaries of Decedent Jack LaSalle v. American International Industries, et al.* original and operative complaints, filed in Superior Court of Washington, King County, Case No. 23-2-08165-0 SEA. | 422 |
| 9 | *Paul T. O'Beirne, Individually and as Personal Representative of the Estate of Cynthia O'Beirne,* original and operative complaints, filed in Commonwealth of Massachusetts, Middlesex SS., Superior Court Department of the Trial Court, Case No. 24-0940. | 487 |
| 10 | A-I-I Proof of Claim filed in Bankruptcy Case No. 23-90794 (MI). | 578 |
| 11 | Certificate of Analysis and Analysis Master Report from Barretts Minerals, Inc. ("BMI") to A-I-I. | 583 |
| 12 | Letter from BMI to A-I-I re: Asbestos Testing for Barretts Talc MP 60-30 USP, dated April 19, 2017. | 586 |
| 13 | Relevant portions of Plaintiff's Motion to Remand, Dkt. No. 8, at 21, in *Maricich v. Chattem et al.*, No. 4:25-cv-03198 (S.D. Tex. Jul. 11, 2025). | 588 |

# EXHIBIT 1

**Chart of Personal Injury and Wrongful Death Claims**

| No. | Case Name | State Court Jurisdiction | Federal Court Jurisdiction | Case Number | Trial Date | Proof of Claim |
|---|---|---|---|---|---|---|
| 1. | *Alduha Ibrahim Leon, as Administrator of the Estate of Marvin R. Fields, deceased v. American International Industries, et al.* | Superior Court of New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-000011-20 AS | 4/5/27 | Schedule No. 2630082 |
| 2. | *Christine Kopp, Individually, and as Personal Representative for the Estate of John R. Kopp v. American International Industries, et al.* | Supreme Court of the State of New York, County of Suffolk | United States District Court, Eastern District of New York | 609596/20 | N/A | Schedule No. 2630256 |
| 3. | *Alison Holtermann, as Administrator for the Estate of Patrice A. Holtermann v. American International Industries, et al.* | Supreme Court of the State of New York, County of New York | United States District Court, Southern District of New York | 190058/21 | 9/23/26 | Schedule No. 2630168 |
| 4. | *Rhonda Ray Schaefer and Dawn Mari King as Co-Executors of the Estate of Sarahsue Nelson, deceased v. American International Industries, et al.* | Superior Court of New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-001022-22 AS | N/A | Schedule No. 2630300 |

| No. | Case Name | State Court Jurisdiction | Federal Court Jurisdiction | Case Number | Trial Date | Proof of Claim |
|---|---|---|---|---|---|---|
| 5. | *John G. Parvin, Individually and as Personal Representative of the Estate of Janice E. Parvin, Deceased v. American International Industries, et al.* | Superior Court of New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-003126-22 AS | 4/5/27 | Schedule No. 2630301 |
| 6. | *Barbara Westover and Darl Westover, Jr., H/W v. American International Industries, et al.* | New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-003011-22 AS | N/A | Schedule No. 2630485 |
| 7. | *Dianne LaSalle, individually, as Personal Representative of the Estate of the Decedent Jack LaSalle, and on behalf of all wrongful death beneficiaries of Decedent Jack LaSalle v. American International Industries, et al.* | Superior Court of Washington, King County | United States District Court, Western District of Washington (Seattle Division) | 23-2-08165-0 SEA | 11/2/26 | Schedule No. 2630268 |
| 8. | *Paul T. O'Beirne, Individually and as Personal Representative of the Estate of Cynthia O'Beirne v. A.W. Chesterton Company, et al.* | Commonwealth of Massachusetts, Middlesex SS., Superior Court Department of the Trial Court | United States District Court District of Massachusetts | 24-0940 | N/A | Filed 7/29/25 |

# EXHIBITS 2-9 INTENTIONALLY OMITTED

# EXHIBIT 10

**Fill in this information to identify the case:**

Name of Debtor & Case Number:

☒ Barretts Minerals Inc.(Case No. 23-90794)
☐ Barretts Ventures Texas LLC (Case No. 23-90793)

**United States Bankruptcy Court for the Southern District of Texas**

# Proof of Claim Official Form 410

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of administrative expenses arising under 11 U.S.C. §503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

American International Industries
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____________

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? ____________

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Nelson Mullins LLP; attn: Julia Gowin<br>Name | ____________<br>Name |
| 19191 S. Vermont Ave., Suite 900<br>Number Street | ____________<br>Number Street |
| Torrance, CA 90502<br>City State ZIP Code | ____________<br>City State ZIP Code |
| Contact phone 424-221-7458 | Contact phone ____________ |
| Contact email julia.gowin@nelsonmullins.com | Contact email ____________ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ____________ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? ____________

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ unliquidated ________. **Does this amount include interest or other charges?**

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached exhibit.

**9. Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ________________

**Basis for perfection:** ________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $________

**Amount of the claim that is secured:** $________

**Amount of the claim that is unsecured:** $ unliquidated ________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $________

**Annual Interest Rate** (when case was filed)________%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $________

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: ________________

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $__________ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $__________ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $__________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $__________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $__________ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $__________ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☒ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within twenty (20) days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $__________ |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 05/06/2024
MM / DD / YYYY

Charles Loveless
*/s/ Charles Loveless, Executive Vice President, American International industries*
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Charles Loveless
First name Middle name Last name

Title: Executive Vice President

Company: American International industries
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 2220 Gaspar Ave.
Number Street
Commerce, CA 90040
City State ZIP Code

Contact phone: 323-728-2999
Email: c-loveless@aiibeauty.com

**EXHIBIT TO PROOF OF CLAIM OF AMERICAN INTERNATIONAL INDUSTRIES ("A-I-I")**

A-I-I manufactures and distributes personal care products including hair care, skin care, and beauty products. As of the filing of this Proof of Claim, A-I-I has been named in civil actions in various jurisdictions where plaintiffs have alleged use of and/or exposure to talcum powder products including "Clubman Talc."

With respect to Barretts Minerals Inc. and its related entities (collectively, "Debtors"), certain plaintiffs allege that Debtors mined and/or manufactured talc contaminated with trace levels of asbestos, which was incorporated into talcum powder products such as Clubman Talc. A-I-I denies such contamination claims. As of the date of this Proof of Claim, plaintiffs have named Debtors as co-defendants in certain causes of action involving A-I-I (collectively, the "Litigation").

This Proof of Claim is therefore filed as an unliquidated Proof of Claim for any and all amounts adjudicated, or otherwise determined, to be owed to A-I-I by Debtors in connection with the Litigation. A-I-I shall supplement this Proof of Claim at such time.

A-I-I expressly reserves the right to amend and supplement this Proof of Claim at any time for whatever reason including, without limitation, for the purpose of filing additional claims or to specify the amount of A-I-I's unliquidated claims as they become liquidated, or to update the estimates of the amounts owed to A-I-I.

By virtue of the filing of the Proof of Claim, A-I-I does not waive, and hereby expressly reserves, its rights to pursue claims including, but not limited to, the claims described herein, against Debtors based upon all available legal theories, including, but not limited to, rights of set off and recoupment.

Due to the voluminous nature of filings in the Litigation, the relevant pleadings and other documents supporting the amount of A-I-I's claims are not attached to this Proof of Claim. A-I-I will provide reasonable documents in support of this claim upon request to counsel for A-I-I.

# EXHIBIT 11

# CERTIFICATE OF ANALYSIS

## BARRETTS MINERALS INC., SUBSIDIARY OF MINERALS TECHNOLOGIES INC.

*8625 HWY. 91 S. DILLON, MT 59725*

SHIP TO: Brenntag Specialties
American Int'l
FAX: 323-728-8877
2220 Gaspar Ave.
City of Commerce, CA. 90040

DATE: 1/18/2016

PRODUCT CODE: MICROTALC MP6030 USP
LOT #: B6022N1
ORDER #: 5073029
CUSTOMER CODE: 1745
CUST. ORDER (P.O.): 150211

MANUFACTURED DATE: 1/11/2016

The following is the technical information you requested.
We appreciate your interest in our products and hope this data will be helpful.

| PROPERTIES | REQUIRED | MEASURED |
|---|---|---|
| Dry Brightness | 86.0 Minimum | 86.7 |
| % +325 Mesh | 1.5 - 3.5 | 1.8 |
| Water Sol. Substances (%) | 0.10 % Maximum | 0.05 |
| Loss on Ignition (wt-%) | 7.0 % Maximum | 5.61 |
| Microbiological Count | 100/gram Max. | 10 |
| Total Molds & Yeasts | < 50 cfu/g | 10 |
| TAP DENSITY ( G/ML) | | 0.8 |

Acidity & Alkalinity Passes
* Lead: <= 0.0001%
* Iron: <= 0.25%
* Calcium: <= 0.90%
* Aluminum: <= 2.0%
* Magnesium: 17.0% - 19.5%
* Arsenic <= 3 ppm (JP)
* Mercury < 1 ppm
* Acid Soluble Substances < 2.0% (JP)
* Identifical Passes

This lot number of talc complies with USP / EP / JP Harmonized Specifications
*This product conforms to current USP Monograph requirements for talc and is suitable for oral or topical administration*
No Class 1, 2 or 3 solvents as defined in ICH Guidelines Q3C and USP/NF Pharmacopeia are used in the manufacturing process of these products.
APPEARANCE: FINE WHITE POWDER
Please be advised that the BARRETTS MINERALS Montana talc(s) which you have purchased contain no detectable quantities of any of the asbestiform minerals, as tested by XRD and TEM.
* These values are not analyzed on each lot, but are based on quarterly composite testing

Approved: BARRETTS MINERALS LABORATORY
Phone: (406) 683-3322

Title: LAB TECHNICIAN

NALYSIS MASTER REPORT

roduct : 808502 TALCRON MP 60-30 USP Desc : BARRETTS MIN MTL #1745 >A CMB
ot . . . : B1432P1 TESTED 08/06/01

AGNESIUM SILICATE/TALC 1745

HIS MATERIAL CONFORMS TO THE SPECIFICATIONS FOR TALC IN THE UNITED STATES PHARMACOPEIA AND SUPPLEMENTS IN EFFECT AS OF THE ABOVE DATE.

| | | |
|---|---|---|
| DENTIFICATION A | MEETS REQUIREMENTS | PASSES TEST |
| DENTIFICATION B | MEETS REQUIREMENTS | PASSES TEST |
| DENTIFICATION C | MEETS REQUIREMENTS | PASSES TEST |
| CIDITY AND ALKALINITY | MEETS REQUIREMENTS | MEETS REQUIREMENTS |
| OSS ON IGNITION | MAXIMUM 7.0% | 1.23 |
| ATER SOLUBLE SUBSTANCES | MAXIMUM 0.1% | .09 |
| RON | MAXIMUM 0.25% | .09 |
| EAD | MAXIMUM 10 ppm | .09 |
| ALCIUM | MAXIMUM 0.9% | .09 |
| LUMINUM | MAXIMUM 2.0% | .09 |
| AGNESIUM | 17.0 to 19.5% | .09 |
| BSENCE OF ASBESTOS (METHOD B) | MEETS REQUIREMENTS | MEETS REQUIREMENTS |
| ICROBIAL LIMITS | AEROBIC COUNT LESS THAN 100 CFU/Gram; COMBINED YEAST AND MOLD LESS THAN 50 CFU/Gram. | PASSES TEST |

HIS MATERIAL IS SUITABLE FOR ORAL AND TOPICAL USE.

ESIDUAL SOLVENTS:
WE DO NOT TEST THIS MATERIAL FOR THE PRESENCE OF THE RESIDUAL SOLVENTS <467> LISTED IN THE UNITED STATES PHARMACOPEIA, INCE BASED ON OUR KNOWLEDGE OF THE MANUFACTURING PROCESS AND CONTROLLED HANDLING AND STORAGE OF THIS MATERIAL, THERE IS NO OTENTIAL FOR THESE TOXIC SOLVENTS TO BE PRESENT. THE MATERIAL IF TESTED WILL COMPLY WITH THESE ESTABLISHED STANDARDS.

EAD, IRON, CALCIUM, ALUMINUM AND MAGNESIUM ARE NOT ANALYZED ON EACH LOT, BUT ARE BASED ON QUARTERLY COMPOSITE TESTING.

omplies with current USP, NF, EP and JP harmonized specifications.

ate of Manufacture: 8.6 - 9.8
helf life: Unlimited, if stored in a clean, dry area in the original unopened packaging.

ANUFACTURED BY: BARRETTS MINERALS, 8625 HIGHWAY 91 SOUTH, DILLON, MT

Jigisha Patel
Director, Regulatory Affairs/Quality Assurance

# EXHIBIT 12

MINERALS TECHNOLOGIES ®

**Barretts Minerals Inc.**
8625 Hwy 91 South
Dillon, MT 59725
Tel: 406 683 3300
Fax: 406 683 3350

April 19, 2017

Charlie Loveless
American International Industries
2220 Gaspar Ave
Los Angeles, CA 90040
(323) 728-2999 Ext 140
C-Loveless@aiibeauty.com

Re: Asbestos Testing for Barretts Talc MP 60-30 USP

Dear Charlie,

MP 60-30 USP produced historically and presently by Barretts Minerals Inc, does not contain regulated asbestiform minerals.

Barretts Minerals completes an asbestos evaluation under the following protocol:

1) Blast-Hole Composite samples of our raw material are taken from a sector of the actively mined talc ore deposit. These blast-hole composite samples are determined by the current mine plan and are analyzed for asbestos prior to extensive mining and transport of the raw talc ore to the plant facility for processing.

2) Quarterly composite product samples of specific product grades, made from the same ore-body previously analyzed as blast-hole composite samples, are again evaluated for asbestos.

   MP 60-30 USP is one of the specific product grades evaluated under the quarterly composite testing program

The asbestos evaluation is accomplished through a combination of:

1) X-Ray Diffraction (XRD) Analysis-full mineral phase identification including the specific determination for the presence of total amphibole and total serpentine. Detection limit for total amphibole is at $< 0.1\%$. Detection limit for total serpentine will vary based on the level of chlorite component in a talc material from $< 0.1\%$ to as high as 2%.

2) Polarized Light Microscopy (PLM): EPA/600/R-93/116, 1993; 400 point counting. Specific to the 400 point counting, the detection limit is at $< 0.25\%$ and is dependent upon the structure's size/dimension (length/width) characteristics

3) Transmission Electron Microscopy (TEM)/SAED/EDS: EPA/600/R-93/116, 1993. TEM detection limit typically at or below $1.0 \times 10^{-4}\%$ (or < 1ppm) that associates with a single amphibole or serpentine asbestiform structure and that is dependent upon the structure's size/dimension (length/width) characteristics

   Presently, the PLM and TEM evaluations are coordinated by the Company's Analytical Services Group and are being done by contract laboratory-RJ Lee Group. RJ Lee Group is accredited by NVLAP, ELAP, and AIHA.

If you have further questions please feel free to contact me

Gary P. Tomaino
Group Leader-Analytical Services
Minteq International Inc./Specialty Minerals Inc.
640 North 13th Street
Easton, PA 18042
610-393-7105 cell
gary.tomaino@mineralstech.com

# EXHIBIT 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN E. MARICICH, JR.; AND KYM MARICICH BENEDICT,<br><br>Plaintiffs<br><br>v.<br><br>CHATTEM, INC., individually, as alter ego of, and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, et al.,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:25-cv-03198<br><br>Originally filed in the Superior Court of the State of California, County of Alameda, Case No. 25CV116787<br><br>Related Cases:<br>Chapter 11<br>In re: BMI OLDCO INC., et al.<br>Bankruptcy Case No. 23-90794 (MI)<br><br>District Court Civil Action No. 4:25-cv-02193<br>Southern District of Texas |

**EMERGENCY APPLICATION FOR IMMEDIATE REMAND OF DYING PLAINTIFF'S MESOTHELIOMA LAWSUIT BACK TO CALIFORNIA STATE COURT; OR IN THE ALTERNATIVE, FOR SHORTENED NOTICE TIME ON A MOTION FOR SUCH RELIEF**

invokes federal 'related to' jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy.' [*Id.* (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001)).] 'Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.' [*Id.* (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995)).]"

[*Cochran v. Johnson & Johnson*, 2019 WL 3202312, *1 (S.D. Tx. 2019).]

Despite the broad reach of "related to" jurisdiction, it did not benefit Johnson & Johnson in the *Imerys* litigation, and it does not benefit MTI and SMI here. That is because Johnson & Johnson could not identify any contractual or equitable indemnity rights whereby Imerys needed to indemnify Johnson & Johnson for its own misconduct. [*Cochran*, 2019 WL 3202312, *2.] Likewise here, MTI and SMI cannot identify any contractual or equitable indemnity rights whereby Barretts needed to indemnify MTI and SMI for their own misconduct. On the contrary, Barretts relied upon MTI and SMI to test and certify the talc. The *Barretts* bankruptcy court observed that both Barretts and injured consumers possess testing claims against MTI and SMI – but MTI and SMI have *no* contractual or equitable indemnity rights against Barretts. [5/19/2025 Transcript, Exh. 9 to Satterley Decl. at 12:7-25.]

DATED: July 11, 2025

KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation

/s/ Joseph D. Satterley
Joseph D. Satterley, Esq.
CA State Bar No. 286890
Admitted *pro hac vice* in related Bankruptcy Case No. 23-90794 (MI)
Denyse F. Clancy, Esq.
TX State Bar No. 24012425
CA State Bar No. 255276
Michael T. Stewart, Esq.
CA State Bar No. 253851
Admitted *pro hac vice* in related Bankruptcy Case No. 23-90794 (MI)
Jack London Market
55 Harrison Street, Suite 400
Oakland, California 94607
Telephone: (510) 302-1000
Fax: (510) 835-4913
jsatterley@kazanlaw.com
dclancy@kazanlaw.com
mstewart@kazanlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re BMI OLDCO INC., et al., | § | Civil Action No. 4:25-cv-2193 |
| | § | |
| **Debtors.** | § | Bankruptcy Case No. 23-90794 (MI) |
| | § | |
| | § | |
| | § | |

**ORDER GRANTING AMERICAN INTERNATIONAL INDUSTRIES' MOTION TO FIX VENUE FOR CLAIMS RELATED TO <u>BMI'S BANKRUPTCY UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b)</u>**

Before the Court is American International Industries' ("A-I-I") Motion to Fix Venue for Claims Related to BMI's Bankruptcy under 28 U.S.C. §§ 157(b)(5) and 1334(b) and Brief in support thereof (the "Motion"), seeking an order transferring and fixing venue in this Court for eight personal injury and wrongful death claims (the "Talc Claims") identified on Attachment 1 below. Having considered the Motion, the arguments of the parties, and the applicable law, the Court finds that good cause exists to grant the Motion.

It is therefore **ORDERS** as follows:

1. The Motion is **GRANTED**.

2. Pursuant to 28 U.S.C. § 157(b)(5), venue for the eight Talc Claims identified below is hereby **FIXED** in the United States District Court for the Southern District of Texas, Houston Division.

3. These eight Talc Claims against A-I-I should be transferred to this Court and stayed pending this Court's determination of whether Barretts Minerals, Inc. ("BMI") talc "contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases."

4. This Order applies solely to the claims asserted against A-I-I in the Talc Claims. This Order does not transfer, remove, or otherwise affect any claims asserted against co-defendants in the underlying state court actions. To the extent any state court action has been or is inadvertently removed in its entirety, the claims against A-I-I shall be severed, and the plaintiffs may proceed against the remaining defendants in the applicable state court unless the Court orders otherwise.

5. The Clerk of Court shall take all necessary administrative steps to docket the Talc Claims in this civil action or in such related proceedings as may be appropriate. As each of the Talc Claims has been removed to a federal district court other than this Court, such claim shall be transferred to this Court in accordance with applicable law and procedure.

6. All proceedings on the Talc Claims in this Court are hereby **STAYED** pending this Court's determination of whether talc sold by BMI contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases (the "Referred Question"), as set forth in the Abatement Order and Report and

Recommendation issued by the Bankruptcy Court and accepted and adopted by this Court (Dkt. No. 42).

7. Consideration of any motion for abstention or remand of any of the Talc Claims, whether filed in this Court or the district court to which the Talc Claim was removed, is **STAYED** pending resolution of the Referred Question.

8. The Court retains jurisdiction over all matters arising from or related to this Order.

SIGNED at Houston, Texas, on ___________________, 2026.

___________________________________________

**GEORGE C. HANKS, JR.**
UNITED STATES DISTRICT JUDGE

# ATTACHMENT 1

| No. | Case Name | State Court Jurisdiction | Federal Court Jurisdiction | Case Number | Trial Date | Proof of Claim |
|---|---|---|---|---|---|---|
| 1. | *Alduha Ibrahim Leon, as Administrator of the Estate of Marvin R. Fields, deceased v. American International Industries, et al.* | Superior Court of New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-000011-20 AS | 4/5/27 | Schedule No. 2630082 |
| 2. | *Christine Kopp, Individually, and as Personal Representative for the Estate of John R. Kopp v. American International Industries, et al.* | Supreme Court of the State of New York, County of Suffolk | United States District Court, Eastern District of New York | 609596/20 | N/A | Schedule No. 2630256 |
| 3. | *Alison Holtermann, as Administrator for the Estate of Patrice A. Holtermann v. American International Industries, et al.* | Supreme Court of the State of New York, County of New York | United States District Court, Southern District of New York | 190058/21 | 9/23/26 | Schedule No. 2630168 |

| No. | Case Name | State Court Jurisdiction | Federal Court Jurisdiction | Case Number | Trial Date | Proof of Claim |
|---|---|---|---|---|---|---|
| 4. | *Rhonda Ray Schaefer and Dawn Mari King as Co-Executors of the Estate of Sarahsue Nelson, deceased v. American International Industries, et al.* | Superior Court of New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-001022-22 AS | N/A | Schedule No. 2630300 |
| 5. | *John G. Parvin, Individually and as Personal Representative of the Estate of Janice E. Parvin, Deceased v. American International Industries, et al.* | Superior Court of New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-003126-22 AS | 4/5/27 | Schedule No. 2630301 |
| 6. | *Barbara Westover and Darl Westover, Jr., H/W v. American International Industries, et al.* | New Jersey Law Division, Middlesex County | United States District Court, District of New Jersey | MID-L-003011-22 AS | N/A | Schedule No. 2630485 |
| 7. | *Dianne LaSalle, individually, as Personal Representative* | Superior Court of Washington, King County | United States District Court, Western District of Washington | 23-2-08165-0 SEA | 11/2/26 | Schedule No. 2630268 |

| No. | Case Name | State Court Jurisdiction | Federal Court Jurisdiction | Case Number | Trial Date | Proof of Claim |
|---|---|---|---|---|---|---|
| | *of the Estate of the Decedent Jack LaSalle, and on behalf of all wrongful death beneficiaries of Decedent Jack LaSalle v. American International Industries, et al.* | | (Seattle Division) | | | |
| 8. | *Paul T. O'Beirne, Individually and as Personal Representative of the Estate of Cynthia O'Beirne v. A.W. Chesterton Company, et al.* | Commonwealth of Massachusetts, Middlesex SS., Superior Court Department of the Trial Court | United States District Court District of Massachusetts | 24-0940 | N/A | Filed 7/29/25 |